UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PHILIP ANDREW FERNALD, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 1:11-cv-00248-NT |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Phillip Andrew Fernald, a young man with chronic pain and mental limitations, has severe impairments but retains the functional capacity to perform substantial gainful activity. Fernald commenced this civil action to obtain judicial review of the denial of his application for disability benefits under Title II and Title XVI of the Social Security Act. I recommend that the Court remand the administrative decision based on considerations related to Fernald's physical work capacity.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the February 11, 2011, decision of Administrative Law Judge Guy E. Fletcher because the Decision Review Board did not complete its review during the time allowed. The ALJ's decision tracks the five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920. (R. 1-16, Doc. No. 8-2.[1])

At step 1 of the sequential evaluation process, the ALJ found that Fernald has not engaged in substantial gainful activity since his alleged onset date. (R. 9, ¶ 2.) At step 2, the

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R.") and filed on the Court's electronic docket in a series of attachments to docket entry 8.

ALJ found that Fernald has the following severe physical and mental impairments: degenerative disk disease, depression, anxiety, and a history of alcohol and drug addiction. (Id., ¶ 3.) At step 3, the ALJ found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Id., ¶ 4.) The ALJ assessed mild limitations in activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration. (R. 10.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Fernald's residual functional capacity. In terms of physical work capacity, the ALJ found that Fernald's combined impairments restrict him to a subset of light work. Among other restrictions, the ALJ found that Fernald can sit for 6 hours and stand/walk for 2 hours in an 8-hour workday and that he cannot do frequent fingering and handling bilaterally. In terms of mental work capacity, the ALJ found that Fernald can understand and remember simple and modestly detailed instructions and tasks, but is limited in his ability to handle complex tasks; that he can work in 2-hour blocks over the course of a normal workday/workweek; that he can maintain attention if interested in the subject; that he can work with co-workers and supervisors but not the public due to anxiety; and that he can adapt to simple changes. (R. 10-11, ¶ 5.)

At step 4, the ALJ found that this degree of limitation precluded past relevant work as a general laborer, lawn care worker, or salesman. (R. 14, ¶ 6.) Fernald was born in 1967, has a high school equivalency degree, and is able to communicate in English. (Id., ¶¶ 7-8.) The ALJ presented a vocational expert with this vocational profile and the residual functional capacity findings and found, based on the vocational expert's hearing testimony, that Fernald could still engage in other substantial gainful employment, including in the sedentary occupation of

addresser and also in the light-duty occupations of routing clerk and bakery worker/conveyor line worker. (R. 14-15, ¶ 10.) This finding dictated a conclusion that Fernald does not qualify as disabled for social security purposes. (R. 15, ¶ 11.)

### DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

Fernald argues that the ALJ erred in regard to his step 2 finding by omitting mention of post-traumatic stress disorder, obsessive-compulsive disorder, panic disorder with agoraphobia, fibromyalgia, and chronic pain. (Statement of Errors at 1, Doc. No. 10.) According to Fernald, the ALJ failed to consider the records developed by Dr. Mark Sutherland, Dr. Jenny Piscutti, and Dr. Kathryn Brant, or certain records prepared by mental health providers. (Id. at 1-2.) Fernald also argues that the ALJ did not properly evaluate his mental functional limitations pursuant to 20 C.F.R. § 404.1520a, without elaboration as to how the analysis fell short. (Id. at 2.) As for physical impairment, Fernald says that the ALJ's residual functional capacity (RFC) finding is less restrictive than the assessment made by Dr. Sutherland, even though the ALJ purported to give significant weight to Dr. Sutherland's opinion. (Id. at 3.) Fernald also asserts that the ALJ's RFC finding differs from the RFC hypothetical the ALJ related to the vocational expert at the hearing. (Id. at 4.)

Because the claimant bears the burden of proof through step 4, including the burden to demonstrate the degree of functional limitation resulting from his impairments, an error in describing a given impairment as non-severe at step 2 is considered "harmless," unless the claimant can demonstrate that the error proved outcome determinative in connection with the later assessment of his RFC. Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280, at *4 n.3, 2009 U.S. Dist. Lexis 122049, *10 n.3 (D. Me. Dec. 29, 2009 Rec. Dec., adopted Jan. 19, 2010) (citing cases). This is typically accomplished by showing that there is evidence that the

3

omitted impairment limits the claimant's RFC in a way, or to a degree, not already accounted for in the ALJ's RFC finding. For reasons that follow, I conclude that the record supplies substantial evidence in support of the finding that Fernald could transition to substantial gainful activity, if his only limitations were psychological. However, the ALJ's use of the expert opinion evidence related to Fernald's physical RFC was erroneous and requires further proceedings.

**A.     Mental Impairment**

Fernald cites the Record at pages 606, 640, and 781-82 to support his argument that the ALJ's mental RFC finding is erroneous. The first reference is to a discharge summary related to a self-referral to the emergency room in 2006. The summary is dictated by and signed by Brian G. Pell, M.D. (Ex. 12F, Doc. No. 8-9.) Dr. Pell listed his DMV-IV, Axis I diagnoses as major depressive disorder and panic disorder. He indicated severe psychosocial stressors under Axis IV. Fernald's second citation is to a counseling assessment in April 2009. Roberta Shaw-Roberge, LCPC, stated her Axis I diagnoses as anxiety disorder due to arthritis and fibromyalgia, obsessive-compulsive disorder, post-traumatic stress disorder, and panic disorder with agoraphobia. (Ex. 16F, Doc. No. 8-10.) The final citation is to a June 2009 Report of Individual with Mental Impairment form prepared by Jenny Pisculli, M.D., of Four Seasons Family Practice. (Ex. 20F, Doc. No. 8-12.)

The ALJ adopted the November 2009 mental residual functional capacity assessment offered by Brian Stahl, Ph.D. (Ex. 29F). Dr. Stahl did not identify OCD, PTSD, or panic disorder as established mental impairments. Dr. Stahl's psychiatric review technique (PRT) form identifies panic attacks and is current through August 2009. He reviewed the Four Seasons treatment records. (Ex. 28F, R. 910.) Brenda Sawyer, Ph.D., also provided a PRT form in June 2009. (Ex. 22F.) She flagged the fact that counselor Shaw-Roberge diagnosed OCD and PTSD

in April 2009. Nevertheless, Dr. Sawyer did not identify these diagnoses as legitimately established, either.

Based on a review of the records, I cannot ascertain any error in the ALJ's reliance on Dr. Stahl's PRT form or mental RFC form. Dr. Stahl considered the treatment records. Dr. Stahl's opinion of Fernald's mental RFC supplies substantial evidence in support of the ALJ's finding. The occupations identified by the vocational expert at the hearing take into account Fernald's mental RFC. For example, the addresser occupation (Dictionary of Occupational Titles # 209.587-010[2]) has general educational development levels in the "simple" work range and, as described by the vocational expert, does not exceed Fernald's social limitations. (R. 43.) The remaining question is whether there is a substantial evidentiary basis for the ALJ's finding that Fernald has the physical capacity to perform the sedentary addresser occupation.

**B.  Physical Impairment**

Fernald complains that the ALJ erroneously evaluated the limiting effects of fibromyalgia and joint pain. It is correct that the ALJ failed to include a physical impairment other than degenerative disk disease in his step 2 list of severe symptoms, but this appears to have been an oversight because the ALJ discussed fibromyalgia and joint pain in his physical RFC discussion and gave "significant weight" to the RFC form supplied by Mark Sutherland, D.O. (R. 11, citing Ex. 35F, Doc. No. 8-13). Dr. Sutherland is a treatment provider at Four Seasons and he clearly based his assessment on a diagnosis of fibromyalgia/chronic pain disorder. Nevertheless, the ALJ's actual RFC finding includes specific findings that do not line up with any expert opinion of record. This calls for further proceedings on remand because the ALJ judged matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

---

[2]  The vocational expert supplied the ALJ with the wrong Dictionary of Occupational Titles code number for the addresser job. The code supplied by the vocational expert (209.582-010) is for the occupation of music copyist.

In Dr. Sutherland's words, Fernald has a "chronic pain syndrome" that "has been thought to be due to fibromyalgia." (Ex. 33F, R. 941.) Dr. Sutherland's medical source statement of ability to do work-related physical activities and his RFC assessment describe greater restrictions than what the ALJ arrived at. (Ex. 35F, R. 979.) For example, Dr. Sutherland assessed a capacity for *less than* two hours of standing or walking in an eight-hour work day, whereas the ALJ found a capacity to stand or walk for two hours. Additionally, Dr. Sutherland assessed upper extremity limitations related to manipulating objects and the ALJ misstated these limitations when relaying his RFC finding to the vocational expert. (R. 41, 981.) There is no substantial evidentiary support for these deviations.

The only other physical RFC assessment of record was prepared by Donald Trumbull, M.D., in November 2009. Dr. Trumbull reviewed the treatment records and history and opined that they do not establish any exertional, postural, manipulative, or other physical limitations whatsoever. (Ex. 27F, Doc. No. 8-13.) Dr. Trumbull acknowledged that one exam suggested fibromyalgia, but he indicated that the record does not describe any physical limitations at a severe level and contains no objective evidence explaining the level of Fernald's symptomatology. (R. 894, 896.) Dr. Trumbull also regarded Fernald's history of drug seeking and abuse to be a major strike against Fernald's credibility. (R. 894.)

The ALJ chose not to rely on Dr. Trumbull's opinion. In light of that fact, Dr. Trumbull's assessment does not supply substantial evidence in support of a compromise RFC finding that accepts some, but not all, of Dr. Sutherland's opinion, particularly where the ALJ has concluded that Dr. Sutherland's assessment deserves "significant weight" because it is "not inconsistent with the medical evidence of record." (R. 11.) Although there certainly is room in a case like this for a credibility evaluation related to subjective reports of pain symptoms, a

compromise assessment of specific limitations calls for either function-specific discussion, see Social Security Ruling 96-8p, 1996 SSR LEXIS 5, *2, 1996 WL 374184, *1 (S.S.A. July 2, 1996) (requiring a "funtion-by-function" analysis), or an underlying expert assessment that endorses the function-specific finding, see, e.g., West v. SSA Comm'r, No. 1:11-cv-00238-JAW, 2012 U.S. Dist. Lexis 34609, *5-7, 2012 WL 892921, *2 (D. Me. Mar. 13, 2012, Rec. Dec., adopted Apr. 2, 2012) (explaining that a function-specific opinion from an expert can support a function-specific finding by the ALJ). Here, the ALJ did not discuss why he deviated from Dr. Sutherland's RFC assessment and he did not have a function-specific expert opinion to provide substantial evidence in support of his actual finding.

In addition to the foregoing concern, which supplies an independent basis for remand, a careful review of Dr. Sutherland's assessment reflects that he almost certainly misread the Commissioner's source statement form because he checked boxes indicating that Fernald is limited in every manipulative task, but then checked boxes indicating that Fernald can perform these tasks either frequently or constantly. (R. 981.) It seems clear that Dr. Sutherland meant to express that Fernald is subject to a frequent or constant limitation, not that Fernald can engage in these functions frequently or constantly. Moreover, Dr. Sutherland's opinion describes, at most, a subset of sedentary work, whereas the ALJ's finding allows for work at the light exertion level. See 20 C.F.R. §§ 404.1567(a), (b), 416.967(a), (b) ("Physical exertion requirements"). Because the ALJ's finding of light-work capacity is not supported by substantial evidence, the light-exertion occupations will not satisfy the Commissioner's burden at step 5. The vocational expert did identify one sedentary occupation (addresser), but Dr. Sutherland's opinion that Fernald can be upright (sitting, standing, or walking) for a total of less than eight hours and his additional assessment of severe manipulative limitations still interfere with the Commissioner's step 5

7

finding, enough to conclude that there is not substantial evidence of Fernald's ability to transition to the occupation of addresser.

## CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court remand the Commissioner's administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 19, 2012